UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 13-cr-111 (JRT/LIB) |
| v. | **REPORT AND RECOMMENDATION** |
| James Patrick Needham, | |
| Defendant. | |

This matter came before the undersigned United States Magistrate Judge upon Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure, [Docket No. 21], regarding the search of, and evidence seized from, Defendant's residence.[1] The case has been referred to the Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1. The Court held a hearing on June 19, 2013, regarding the suppression motion and both parties' discovery motions.[2] For reasons outlined below, the Court recommends the motion be DENIED.

I. BACKGROUND

James Patrick Needham (Defendant) is charged with one count of possession of child pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2), and one count of distribution of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1). (Indictment [Docket No. 1]). Federal law enforcement officers searched Defendant's residence in Red Lake, Minnesota, on July 14, 2011. (See Part II, infra). Defendant was indicted on May 6, 2013, and subsequently, he brought this motion on May 21, 2013.

---

[1] Defendant also brought a Motion to Suppress Statements, Admissions and Answers, [Docket No. 22], but withdrew that motion on the record at the June 19, 2013, motions hearing. (See Minute Entry [Docket No. 22]).
[2] The discovery motions were the subject of a separate Order. [Docket No. 31].

1

## II.  FACTS[3]

Special Agent Joe A. Ogden (SA Ogden) of the Federal Bureau of Investigation (FBI) swore out the affidavit for the search warrant application, based on his own investigation and on information provided by other law enforcement agents. (Gov't's Ex. 1, Aff. Ogden, at 1, ¶ 4). On July 14, 2011, the SA Ogden sought a warrant authorizing (1) the search of a home located in Red Lake, Minnesota ("the residence" or "Defendant's residence"), and (2) the seizure of evidence related to the receipt, possession, reproduction, and distribution of child pornography. (Id. at 1-2, ¶¶ 2-6).

In or around August 2010, the FBI began to investigate the possible distribution of child pornography on the social networking platform GROU.PS. (Id. at 9, ¶ 11; at 10, ¶ 12). The FBI identified twelve (12) groups on GROU.PS that contained images and/or videos believed to be child pornography, and on September 17, 2010, the FBI obtained and executed federal search warrants[4] on GROU.PS seeking information related to those twelve (12) groups and their members. (Id. at 11, ¶¶ 13-14). GROU.PS provided information about each of the users of the twelve (12) targeted groups, including each member's email address, the date of the member's subscription, and the names of each group the member was a member of. (Id. at 12, ¶15). GROU.PS also provided, for each image or video uploaded to the targeted groups, the IP address from which the image or video was uploaded, the date and time of the upload, and access to the image or video. (Id.).

One of the groups being investigated was called http://grou.ps/boy2kid (boy2kid). (Id. at 11, ¶¶ 13-14). Upon reviewing the data provided by GROU.PS, investigators identified eleven

---

[3] The factual record is derived from the Government's application for a search warrant, from the affidavit attached thereto, from the attachments and addendum attached to the affidavit, from the search and seizure warrant signed on July 14, 2011, by Hon. Mary Kay Klein, all of which was submitted by the Government, and admitted by the Court, as Government's Exhibit 1.
[4] The search warrants were issued by the U.S. District Court for the District of Maryland. (Id. at 11, ¶ 14).

(11) images of alleged child pornography posted to boy2kid on August 4, 2010, by a member using the username "Rezchub61." (Id. at 12-13, ¶ 17).[5] Investigators identified the Internet Protocol address (IP address)[6] associated with the uploads and determined that it was assigned to Paul Bunyan Communications. (Id. at 13, ¶ 18). However, Paul Bunyan Communications, in response to an administrative subpoena, stated that the IP address associated with the uploads was shared by multiple customers. (Id.). Investigators then undertook to compare the IP address used to upload the images to IP addresses utilized by SoftLayer, which hosted the GROU.PS websites, and by AmazonA WS, which hosted content uploaded to the GROU.PS websites. (Id. at 13, ¶¶ 18-20).

By such comparison, investigators were able to determine that, on the date and during the times that the images at issue were uploaded by "rezchub61," Defendant was the only Paul Bunyan Communications customer connected to the IP addresses being investigated. (Id. at 13, ¶ 20). Paul Bunyan Communications reported that the last name of the member using "rezchub61" was Needham, and provided a mailing address in Red Lake, Minnesota, zip code 56671, for a customer named "James D. Needham." (Id. at 13-14, ¶¶ 20-21). GROU.PS identified "rezchub61" as using the email account rezchub61@yahoo.com. (Id. at 14, ¶ 21). In response to administrative subpoenas, Yahoo! provided information that the rezchub61@yahoo.com email address belonged to an account holder who identified himself as "Mr. Rick Needham," in zip code 56671, and that the account holder listed an alternate email address of redchub61@yahoo.com, which belonged to an account holder who identified himself as "Mr. James Needham," in zip code 56671. (Id. at 14-15, ¶ 23).

---

[5] The affidavit also uses the spelling "rezchub61" (beginning with a lower-case "r"). (See, e.g., Id. at 13, ¶¶ 18, 20).
[6] An IP address "refers to a unique number used by a computer to access the Internet." (Id. at 5, ¶ 8.i).

The information provided by Paul Bunyan Communications did not include a specific physical address for the customer named James Needham, but provided that he lived on the Red Lake Indian Reservation on a road known both as "Back of Town Road" and "Crossroads Avenue." (Id. at 15, ¶ 24). SA Ogden then reached out to Red Lake Director of Tribal Engineering Dean Branchaud, who stated that a James Needham lived in a modular home a road known both as "Back of Town Road" and "Crossroads Avenue." (Id. at 15, ¶ 26). Red Lake Criminal Investigator Jason Richards contacted Defendant at his residence on Crossroads Avenue, which Defendant identified as "Back of Town Road." (Id. at 15, ¶ 25).[7]

SA Ogden's affidavit provided a physical description of Defendant's residence, and of its location, and an attachment included a photograph of the residence. (Id. at 15, ¶¶ 24-27; at Attachment A).

In his affidavit, SA Ogden describes, based on his training and experience, some of the common characteristics of child pornography collectors. (Id. at 8-9, ¶ 10). Among those characteristics, according to SA Ogden: "The majority of individuals who collect child pornography rarely, if ever, dispose of their sexually explicit materials and may go to great lengths to conceal and protect their collection of illicit materials from discovery, theft, and damage." (Id. at 9, ¶ 10.f).

SA Ogden swore out his affidavit before Hon. Mary Kay Klein, U.S. Magistrate Judge, on July 14, 2011. (Id. at 16). Attachments included a photograph of Defendant's residence and specified items to be seized, including computers and computer-related equipment. (Id. at Attachments A-B). Judge Klein signed the search warrant on July 14, 2011, authorizing such search and seizure on or before July 28, 2011, between the hours of 6:00 a.m. and 10:00 p.m. (Gov't's Ex. 1, Search Warrant).

---

[7] Defendant also indicated that the road is also known as "Omen Road." (Id.)

**III.     DISCUSSION**

Defendant argues that the search warrant was issued without a sufficient showing of probable cause, and therefore, the Court should suppress evidence obtained as a result of that search. At the June 19, 2013, motions hearing, the Government submitted to the Court the search warrant and supporting affidavit, and subsequently, the parties submitted briefing on the question of whether search warrant was supported by probable cause. (See Docket Nos. 29, 30).

**A.  Standard of Review**

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and that "no warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. The Eighth Circuit has explained that "[a]n affidavit for a search warrant need only show facts sufficient to support a finding of probable cause." United States v. Parker, 836 F.2d 1080, 1083 (8th Cir. 1987). Probable cause exists when "a practical, common-sense" evaluation of "all the circumstances set forth in the affidavit" demonstrate "a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). "Probable cause is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" United States v. Colbert, 605 F.3d 573, 576 (8th Cir. 2010) (quoting Gates, 462 U.S. at 231). "The existence of probable cause depends on whether, in the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005) (quoting United States v. Murphy, 69 F.3d 237, 240 (8th Cir. 1995) (quoting, in turn, Gates, 462 U.S. at 238)).

The sufficiency of a search warrant affidavit is examined using "common sense and not a hypertechnical approach." United States v. Grant, 490 F.3d 627, 632 (8th Cir. 2007) (citation and internal quotations omitted). "Therefore, '[w]hen the [issuing judge] relied solely upon the supporting affidavit to issue the warrant, only that information which is found in the four corners of the affidavit may be considered in determining the existence of probable cause.'" United States v. Wiley, No. 09-cr-239 (JRT/FLN), 2009 U.S. Dist. LEXIS 116899, at *6 (D. Minn. Dec. 15, 2009) (Tunheim, J.) (quoting Solomon, 432 F.3d at 827; edits in Wiley). "In ruling on a motion to suppress, probable cause is determined based on 'the information before the issuing judicial officer.'" United States v. Smith, 581 F.3d 692, 694 (8th Cir. 2009) (quoting United States v. Reivich, 793 F.2d 957, 959 (8th Cir. 1986)). Nevertheless, "[a] magistrate's 'determination of probable cause should be paid great deference by reviewing courts,'" Gates, 462 U.S. at 236 (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969)). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . [concluding]' that probable cause existed." Gates, 462 U.S. at 238-39 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)).

**B. Analysis**

   **1. The sufficiency of the affidavit.**

Based on the information provided in the affidavit, there is ample evidence to conclude that probable cause existed for the issuance of the search warrant. "If an affidavit alleges that a defendant possesses child pornography, which can be found on a computer [at] the defendant's home, a reasonable person would find a fair probability that child pornography will be found there." United States v. Skjonsby, No. 10-cr-315 (MJD/JJG), 2011 U.S. Dist. LEXIS 16546, at *4 (D. Minn. Jan. 14, 2011) (Graham, M.J.) (citing Grant, 490 F.3d at 629 (upholding search of

computer after service technician found suspect images); and United States v. Terry, 305 F.3d 818, 823 (8th Cir. 2002) (affirming search of home after child pornography was found in suspect's truck)), adopted by 2011 U.S. Dist. LEXIS 16538 (D. Minn. Feb. 18, 2011) (Davis, C.J.).

Here, the FBI identified several images of alleged child pornography that appeared to have been uploaded to the GROU.PS group boy2kid from an IP address shared by Defendant, and information provided by Paul Bunyan Communications indicated that, of the account holders who shared that IP address, only Defendant was active at the time of the upload. The possession and/or distribution of such images is a federal offense. See 18 U.S.C. § 2252. Thus, the Court concludes that the application here meets the requirements of the Fourth Amendment and is sufficient to support a finding of probable cause.[8]

Defendant first argues that, because the upload of alleged child pornography occurred almost a full year before the search warrant was executed, that the evidence supporting the warrant was stale and the warrant untimely. (Def.'s Mem. Supp. Mot. Suppress Evid. [Docket No. 29], at 5, 7-9). The Eighth Circuit has held that "[t]he date of the occurrence of the facts relied upon in an affidavit is of importance in the determination of probable cause because untimely information may be deemed stale." United States v. Summage, 481 F.3d 1075, 1078 (8th Cir. 2007) (citing United States v. Gettel, 474 Fl3d 1081, 1086 (8th Cir. 2007); United States v. LaMorie, 100 F.3d 547, 554 (8th Cir. 1996)). In the present case, however, the

---

[8] See, e.g., United States v. Gozola, No. 12-cr-130 (DWF/FLN), 2012 U.S. Dist. LEXIS 106000, at *11-12 (D. Minn. July 10, 2012) (Noel, M.J.) (finding probable cause where affidavit clearly establishes connection between defendant and the IP address from which files, which appeared to show minors engaged in sexual conduct, were downloaded), adopted by 2012 U.S. Dist. LEXIS 103925 (D. Minn. July 26, 2012) (Frank, J.); United States v. Chase, No. 11-cr-150 (JRT/JSM), 2011 U.S. Dist. LEXIS 120222, at *8 (D. Minn. Oct. 18, 2011) (Tunheim, J.) (finding probable cause where affidavit provided information that connected the uploading of child pornography to defendant's residence), aff'd ___ F.3d ___, 2013 U.S. App. LEXIS 12961 (8th Cir. June 25, 2013); Skjonsby, 2011 U.S. Dist. LEXIS 16546, at *4-5.

evidence relied upon in issuing the search warrant was not so stale as to undermine probable cause.

Defendant asserts, without citation to authority, that "the twelve-month gap[9] between the single upload allegation and the time of the execution of the warrant . . . renders it deficient." (Def.'s Mem. Supp. Mot. Suppress Evid. [Docket No. 29], at 8). However, "[t]here is no bright-line test for determining when information is stale. . . . Time factors must be examined in the context of a specific case and the nature of the crime under investigation." Summage, 481 F.3d at 1078 (quoting United States v. Koelling, 992 F.2d 817, 822 (8th Cir. 1993)) (brackets added; ellipsis in Summage). "[T]he lapse of time is least important . . . when the [evidence of criminal activity] is not likely to be destroyed or dissipated." United States v. Gleich, 397 F.3d 608, 613 (8th Cir. 2005) (quoting United States v. Horn, 187 F.3d 781, 786 (8th Cir. 1999) (citing, in turn, Koelling, 992 F.2d at 822-23)).

Here, "the nature of the crime under investigation" includes the fact, established by SA Ogden in his affidavit, that "[t]he majority of individuals who collect child pornography rarely, if ever, dispose of their sexually explicit materials." (Gov't's Ex. 1, Aff. Ogden, at 9, ¶ 10.f). "Many courts, including [the Eighth Circuit], have given substantial weight to testimony from qualified law enforcement agents about the extent to which pedophiles retain child pornography." United States v. Lemon, 590 F.3d 612, 615 (8th Cir. 2010).[10] In Lemon, a Minnesota case, both the District of Minnesota and the Eighth Circuit upheld search warrants where the time gap between the evidence of possession and/or distribution of child pornography

---

[9] Actually, the gap between the date of the upload of alleged child pornography and the issuance and execution of the search warrant—from August 4, 2010, to July 14, 2011—was closer to eleven (11) months than to twelve (12). Nonetheless, for the sake of argument, the Court accepts Defendant's characterization of the time period as a "twelve-month gap."

[10] Citing United States v. Chrobak, 289 F.3d 1043, 1046 (8th Cir. 2002); United States v. Morales-Aldahondo, 524 F.3d 115, 119 (1st Cir. 2008); United States v. Irving, 452 F.3d 110, 125 (2d Cir. 2006); United States v. Riccardi, 405 F.3d 852, 861 (10th Cir. 2005); United States v. Lacy, 119 F.3d 742, 746 (9th Cir. 1997).

and the execution of a search warrant was greater than the gap here. See, e.g., United States v. Lemon, No. 08-cr-246 (SRN/DSD), 2008 WL 4999235, at *3-5 (D. Minn. Oct. 23, 2008) (Nelson, M.J.) (gap of eighteen (18) months did not undermine probable cause finding), adopted by 2008 U.S. Dist. LEXIS 94437, at *2 (D. Minn. Nov. 19, 2008) (Doty, J.) ("child pornography collectors typically retain pornographic material for long periods of time"), aff'd 590 F.3d at 614-15.

Additionally, Defendant asserts that SA Ogden's affidavit was insufficient to establish probable case because "[t]he conclusory allegations in Paragraph 17-27 provide little guidance as to how, why, or what analysis was used to determine that James Needham's IP address had uploaded the described child pornography images." (Def.'s Mem. Supp. Mot. Suppress Evid. [Docket No. 29], at 6). On the contrary, SA Ogden's affidavit is quite detailed: the IP address was identified as assigned to Paul Bunyan Communications, which stated that the IP address was used by multiple customers, but that only one of those customers was active at the time of the upload at issue; in response to administrative subpoenas, Paul Bunyan Communications revealed that the IP address in question had connected with an IP address utilized by a GROU.PS server host; that GROU.PS reported that the uploader used an email address of rezchub61@yahoo.com, and that Yahoo! reported that that email address (although purportedly registered to a "Rick Needham") was connected to a second email address, redchub@yahoo.com, which was registered to a James Needham. Contrary to Defendant's suggestions, references in SA Ogden's affidavit referring to a "Rick Needham" and to a second email address do not undermine the credibility of the affidavit, but instead help to draw connections between seemingly disparate pieces of information.

Defendant further argues that what he describes as the "singular nature of the uploading allegation" undermines the factual basis for the search. (Id. at 7-8). Defendant argues without citation to any authority that, because "[t]his was not an ongoing investigation of James Needham," and because "[a]ll the officer had here is a single instance of a posting to a group networking site a year ago[, t]his is insufficient to establish probable cause." (Id. at 7).

The Government objects to Defendant's characterization of the upload as "singular," noting that eleven (11) different images were uploaded during a four-(4)-minute period on August 4, 2010. (Gov't's Resp. Opp. Mot. Suppress Evid. [Docket No. 30], at 5). However, even accepting Defendant's characterization of the event as "singular," the Eighth Circuit has held that a single image of child pornography can suffice to provide probable cause to search a suspect's computer. See United States v. McArthur, 573 F.3d 608, 613-14 (8th Cir. 2009). In McArthur, the defendant was arrested for public indecency, and at the time of his arrest his wallet was found to contain a laminated photograph of a nude child that had been modified using computer software. Id. at 613. He argued that the photograph alone was insufficient to support an inference that he kept child pornography in his home or on his computer. Id. The court disagreed, finding that, "[c]onsidering the totality of the circumstances and examining the affidavit using a common-sense approach," there was probable cause sufficient to support issuing the search warrant. Id. at 614.

Using the same common-sense approach, and considering the totality of the circumstances, this Court concludes that SA Ogden's affidavit provided probable cause for the issuance of the warrant for the search of Defendant's residence. SA Ogden described how the FBI first learned of the upload of alleged child pornography on August 4, 2010, and reported that persons suspected of possessing child pornography often retain such materials for long periods of

time. He recounted in detail the steps that investigators used to determine who had uploaded the alleged child pornography on that day, pulling together information from Paul Bunyan Communications (which was assigned the IP address that generated the upload), GROU.PS (which received the upload), the server and computer storage companies that hosted GROU.PS, and Yahoo!. He took care to make certain that he had the right house, double-checking with two (2) Red Lake tribal officials. Considering the totality of the circumstances, and using a common sense approach, this Court concludes that SA Ogden's affidavit and attachments provided at least "'a fair probability that contraband or evidence of a crime'"—in particular, images of child pornography stored on a computer or similar device—would be found at the particular place described in the affidavit, i.e., Defendant's residence. Solomon, 432 F.3d at 827 (quoting Murphy, 69 F.3d at 240 (quoting, in turn, Gates, 462 U.S. at 238)).

**2. The good-faith rule.**

Additionally, even if the Court were to conclude that there was not probable cause to support the search warrant, the executing officers' good-faith reliance on that warrant would militate against suppressing evidence obtained in the search. See United States v. Leon, 468 U.S. 897, 919-21 (1984) (exclusionary rule does not apply "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope").[11]

---

[11] See also United States v. Johnson, 219 F.3d 790, 791 (8th Cir. 2000) ("Even if we thought the warrant affidavit did not establish probable cause, the good faith exception to the warrant requirement would apply because the affidavit was sufficient to allow an officer to reasonably believe probable cause existed."); United States v. Rugh, 968 F.2d 750, 753 (8th Cir. 1992) ("When police objectively and reasonably believe that probable cause exists to conduct a search based on an issuing judge's determination of probable cause, evidence seized pursuant to the ultimately invalid search warrant need not be suppressed.").

11

Defendant argues that this case falls within one of the exceptions to the application of the Leon good-faith rule,[12] in particular, that "the affidavit was completely lacking in probable cause to search Mr. Needham's house," and that "[a]n experienced law enforcement officer would have to have known that on the face of the warrant, it was deficient in terms of probable cause." (Def.'s Mem. Supp. Mot. Suppress Evid. [Docket No. 29], at 9).

This argument is conclusory, and for the reasons set forth above is in fact contradicted by the totality of the circumstances in this case. In Leon, the type of warrant described as being "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid," was a warrant that "fail[ed] to particularize the place to be searched or the things to be seized." 468 U.S. at 923. Even if this Court was to accept Defendant's previous arguments with regard to the timeliness of the search, and the complicated effort to connect the upload at issue to Defendant, and the "singularity" of the upload—which the Court has already discounted—those "deficiencies" are not of a scale on par with a complete failure to particularize the place to be searched or the things to be seized. To repeat: SA Ogden's affidavit begins with an upload of alleged child pornography to GROU.PS, meticulously tracks that upload back to an internet account associated with Defendant, and carefully ensures that the residence to be search is Defendant's. And, having done so, SA Ogden specified with particularity the place to be searched, (see, e.g., Aff. Ogden, Attachment A), and the things to be seized, (Id., Attachment B). Thus, even if the affidavit failed to articulate probable cause for the search, the good-faith rule would apply because Defendant's case does not fall within the exception to Leon relied upon by Defendant.

---

[12] See Leon, 468 U.S. at 923 (exceptions to the good faith rule when issuing judge "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth," "where the issuing magistrate wholly abandoned his judicial role," or when the warrant is "so facially deficient -- i.e., in failing to particularize the place to be searched or the things to be seized -- that the executing officers cannot reasonably presume it to be valid").

Consequently, the Court recommends that the Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 21] be DENIED.

IV. **CONCLUSION**

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 21] be **DENIED**.

Dated: July 8, 2012  /s/ Leo I. Brisbois_____
LEO I. BRISBOIS
United States Magistrate Judge

**N O T I C E**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by July 22, 2013**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.