UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>James Patrick Needham,<br><br>Defendant. | File No. 13-CR-111-JRT-LIB<br><br><br>MEMORANDUM IN SUPPORT<br>OF MOTION TO MODIFY<br>SENTENCE OF IMPRISONMENT |

## INTRODUCTION

James Patrick Needham submits this memorandum in support of his motion to modify his prison sentence under 18 U.S.C. § 3582(c) by reducing his term of imprisonment to time served and replacing it with a term of supervised release under conditions the Court deems just.

Mr. Needham currently resides at Rochester FMC, which has experienced a serious COVID-19 outbreak in which over 392 inmates have tested positive. Mr. Needham suffers from serious health conditions, including heart disease, high blood pressure, and Atrial Fibrillation, obesity, pre-diabetes, and a life-threatening allergy to red meat. All of these conditions expose him to elevated risk of prolonged complications and death due to COVID-19. Taken together, the relevant factors constitute "extraordinary and compelling reasons" for Mr. Needham's release.

Moreover, Mr. Needham does not pose a danger to the community. His record shows that he has had only one minor disciplinary citation, in which he missed count due to his medical issues. He has the support of his wife. He has a plan for his release, and the resources and skills to make it succeed and to rebuild his life. For these reasons, the Court should grant Mr. Needham's motion.

## BACKGROUND

### A. Sentencing and BOP Placement

Following a trial, on January 9, 2015, Mr. Needham was convicted of one count of possession of child pornography and one count of distribution of child pornography. (ECF 77.) On December 14, 2015, Mr. Needham was sentenced to serve 120 months in prison, with a term of supervision of 15 years. (ECF 103, 104.) Mr. Needham has been incarcerated since February 6, 2016 at Milan, Butler, and Rochester FMC. Mr. Needham has served over five years of his sentence and is scheduled to be released on August 10, 2024, and will be eligible for the Elderly Offender Two Thirds Date on October 3, 2022. (Defendant's Appendix ("App.") at 1-2.)

### B. Mr. Needham's medical conditions.

Mr. Needham has a rare and potentially life threatening allergy to red meat. He cannot come into contact with red meat, and issues with cross contamination are problematic. He cannot eat food that has been cooked in the same pan as any red meat, or have any exposure to red meat. (ECF 100.) Before he was

incarcerated, he had been taken by ambulance to the Red Lake hospital three time in the last two years due to allergic reaction to red meat (he goes into anaphylactic shock). (*Id.*) Mr. Needham also has heart disease, high blood pressure, and Atrial Fibrillation. (App. at 99-101.) In addition, Mr. Needham suffers from chronic primary hypertension and high blood pressure. He smoked a pack of cigarettes a day for 30 years. He has been diagnosed with Pre-diabetes, has a BMI of over 33, and is clinically obese. He takes multiple medications to manage his heart disease and carries an EpiPen and Benadryl with him at all times because of his severe allergy to meat products. (*Id.*)

    C.    **Procedural background regarding compassionate release.**

In June 2020, Mr. Needham submitted a request for compassionate release and reduction in sentence consideration to FMC Rochester staff. (App. at 313.) That request was denied on August 13, 2020, with Mr. Needham receiving notice of such denial on October 8, 2020. (App. at 314.) This District's Probation and Pretrial Services Office conducted a Compassionate Release – Prelease Plan that identified Mr. Needham's wife, Tharen Stillday, as willing and able to provide care for him. (ECF 132.) She is aware of all Mr. Needham's conditions of supervision and is agreeable to all conditions imposed. Probation approved this plan on January 7, 2021. (*Id.*)

    D.    **COVID-19 in BOP facilities**

3

The United States has surpassed 27.4 million cases and nearly 500,000 related to the COVID-19 pandemic. No corner of the United States has been spared, and indeed, the Center for Disease Control and Prevention ("CDC") warns that the virus poses a unique risk to correctional facilities. *See* https://covid.cdc.gov/covid-data-tracker/#correctional-facilities (identifying correctional facilities as "People at Increased Risk") (last accessed February 15, 2021). Due to the conditions under which the inmates live, they are at extreme risk of infection once COVID-19 breaches prison walls. Social distancing in these facilities is nearly impossible. Indeed, more than 394,854 inmates housed at United States correctional institutions have tested positive for COVID-19 and over 2,351 inmates have died from the virus. (*Id.*)

FMC Rochester is no exception. As of February 15, 2021, 392 inmates at FMC Rochester have tested positive for COVID-19. *See* https://www.bop.gov/coronavirus/index.jsp (last accessed Feb. 15, 2021).

## ARGUMENT

Under 18 U.S.C. § 3582(c), federal district courts may modify a sentence of imprisonment under specified circumstances, including situations where "extraordinary and compelling reasons warrant" it. *Id.* § 3582(c)(1)(A)(i). As amended by the First StepAct,[1] a § 3582(c) motion may be brought by a defendant who is subject to the sentence of imprisonment. If the motion is granted, the district court may subsequently reduce the term of imprisonment, yet retain the period of supervised release initially imposed (or increase the period of supervised release). *Id.* § 3582(c)(1)(A)(i).

In recognition of the extraordinary and compelling circumstances related to the gravity of Mr. Needham's medical conditions and his particular vulnerability to COVID-19 complications, Mr. Needham seeks his release from FMC Rochester with his fifteen years of supervised release set to begin upon his release. This is consistent with the Compassionate Release – Prerelease Plan identified by Probation and Pretrial Services, and is it appropriate given Mr. Needham's serious medical conditions.

---

[1] The First Step Act also amended other provisions of the U.S. Code with the goal of "promot[ing] rehabilitation of prisoners and unwind[ing] decades of mass incarceration." *United States v. Walker*, No. 11-CR-381 (SRN/HB), 2020 WL 4194677, at *2 (D. Minn. June 26, 2020) (quoting United States v. Stephenson, 3:05-CR-00511, 2020 WL 2566760, at *2 (S.D. Iowa May 21, 2020)).

A.  **Mr. Needham exhausted his administrative remedies.**

More than 30 days have elapsed since Mr. Needham provided his original compassionate release request to the Warden on June 24, 2020. (Add.) That request was denied on August 13, 2020, with Mr. Needham receiving notice of such denial on October 8, 2020. (Cite.) Mr. Needham thus has met the statutory exhaustion requirement of 18 U.S.C. § 3583(a)(1)(A), *see United States v. Granley*, No. CR 16-196 ADM/LIB, 2020 WL 5517485, at *2 (D. Minn. Sept. 14, 2020).[2]

---

[2] *See also United States v. Edison*, No. CR 12-225 (DWF), 2020 WL 3871447, at *3 (D. Minn. July 9, 2020) ("The record reflects that Edison requested compassionate release from the warden at FCI Fort Dix sometime before May 28, 2020. More than 30 days have now lapsed since he submitted a request to his warden. Accordingly, the Court finds that Edison's Motion is properly before the Court."); *United States v. Arafat*, No. 12CR00045SRNJJG, 2020 WL 3790727, at *5 (D. Minn. July 7, 2020) (holding that, "to be entitled to relief pursuant to § 3582(c)(1)(A), a defendant generally must exhaust administrative remedies or wait 30 days from the warden's receipt of a request for release, as a precondition to seeking judicial intervention[,]" and "find[ing] that more than 30 days have now lapsed from the receipt of Mr. Arafat's request for release by the warden, which is all the statute appears to require before he can proceed in district court"); *United States v. Warren*, No. 10-CR-0276 (PJS/JJG), 2020 WL 3634513, at *1 (D. Minn. Jan. 2, 2020) ("If the BOP fails to act within 30 days of receiving the request, or if the BOP decides not to file a motion on the defendant's behalf, the defendant himself can move the court to reduce his sentence under § 3582(c)(1)(A)." (Footnote omitted.)).

>   B.  **Mr. Needham's serious and rare health concerns and the presence of COVID-19 at FMC-Rochester are "extraordinary and compelling reasons" to reduce his sentence.**

Mr. Needham's numerous diagnoses, in combination with his increased susceptibility to COVID-19 and enhanced vulnerability to its dangers, present extraordinary and compelling reasons warranting his release.

The First Step Act allows for a reduction in sentence or compassionate release when "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Though the statute does not define "extraordinary and compelling reasons," Congress authorized the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The Commission enumerates several "extraordinary and compelling reasons" justifying a reduction of sentence, including the "medical condition of the defendant," the defendant's "age" and "family circumstances." U.S.S.G. § 1B1.13 cmt. n.1(A)-(C). These Sentencing Guidelines also provide a catch-all provision, allowing courts to consider "other extraordinary and compelling reasons that exist either separately or in combination with previously described categories." *United States v. Walker*, No. 16-cr-33(1) (DWF/LIB), No. CR16331DWFLIB, 2020 WL 2490101, at **2-3 (D. Minn. May 14, 2020) (citing U.S.S.G. § 1B1.13); *see also United States v. Walker*, 2020 WL 4194677, at *2 (D. Minn. June 26, 2020).

7

Under the Sentencing Guidelines, a defendant's medical condition may form the basis for a reduction in sentence when the defendant suffers from a serious medical condition that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13, comment (n.1(A)(ii)). Alternatively, an inmate's serious medical condition "in combination with" additional factors may also justify compassionate release. *See Walker*, 2020 WL 4194677, at *3 (citing U.S.S.G.§ 1B1.13 cmt. n.1(A)-(D)). Such is the case here. COVID-19 presents novel andexigent dangers to Mr. Needham that, together with certain medical conditions, justify compassionate release.

Given its particularly devastating impact on correctional facilities, "[t]he number of courts agreeing the COVID-19 pandemic constitutes an extraordinary and compelling reason for release if there ever was one grows by the day." *United States v. O'Neil*, 464 F. Supp. 3d 1026, 1035 (S.D. Iowa June 2, 2020) (collecting cases). When considering compassionate release motions in the context of the COVID-19 pandemic, courts have required an inmate to show both a "particularized susceptibility to the disease" and "a particularized risk of contracting the disease at his prison facility." *See United States v. Anderson*, No. CR 99-229(1) ADM/AJB, 2020 WL 6705694, at *3 (D. Minn. Nov. 13, 2020) (collecting cases). Under this standard, an inmate's "vulnerable health status and the presence of the virus in his facility constitute 'extraordinary and compelling

8

reasons'" that warrant a reduction of his sentence. *See United States v. Trice*, 12-cr-96 (PAM), 2020 U.S. Dist. LEXIS 141608, at *3 (D. Minn. Aug. 7, 2020).

Mr. Needham is particularly susceptible to complications from COVID-19 because of his pulmonary hypertension, atrial fibrillation, prediabetes, history of smoking, and obesity. (See Def. cite.) Guidance from the CDC acknowledges that people suffering from these conditions are at increased risk of severe complications from COVID-19. See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed February 15, 2021). Regardless of age, all obese individuals (those with a BMI or 30 or above) are at a heightened risk. (*Id.*)

Other courts, including in this district, have agreed with CDC guidance and granted motions for a reduction in sentence and compassionate release where obesity, hypertension, and/or high blood pressure rendered inmates especially vulnerable should they contract COVID-19. *See United v. Banks*, No. 17-cr-324 (DSD/KMM), ECF No. 93, at *4 (hypertension); *United States v. Bennett*, No. 15-cr-260(10) (PAM/TNL), ECF No. 1025, at *2 (prediabetes, obesity, hypertension, and high blood pressure); *United States v. McElrath*, No. 3-cr-235 (JNE)(1), 2020 WL 542067, at *4 (D. Minn. Sept. 10, 2020) (obesity and hypertension); *Trice*, 12-cr-96 (PAM), 2020 U.S. Dist. LEXIS 141608, at *2 (hypertension); *United States v. Hassan*, No. 10-187 (02) (MJD), 2020 WL 5424797, at **1-2 (D. Minn. Sept. 10, 2020) (hypertension).

9

Finally, that Mr. Needham's medical conditions have remained treatable is not dispositive. Where, as here, an inmate suffers from diagnosed medical conditions that make him more susceptible to complications from COVID-19, it is immaterial whether those conditions are currently "under control." *See Walker*, No. 11-cr-381 (SRN/HB), 2020 WL 4194677, at *5.

### C. Other sentencing factors support a reduction in Mr. Needham's sentence.

In considering a sentence reduction under 18 U.S.C. § 3582(c) the Court must also consider the factors enumerated in 18 U.S.C. § 3553(a). Importantly, a court may consider post-offense developments under § 3553(a), which provides "the most up-to- date picture" of the defendant's history and characteristics. *Pepper v. United States*, 562 U.S. 476, 490-93 (2011). These factors, and especially Mr. Needham's post-offense conduct, support a reduction of Mr. Needham's sentence.

As proof, Mr. Needham has been a model inmate. In his more than five years in BOP custody, Mr. Needham has only received a one minor disciplinary citation for interfering with count, due to the fact that he was taking a lot of medication. (App. 324) His prison record demonstrates a commitment to self-rehabilitation and self-improvement as he has participated in drug treatment and completed extensive additional coursework, including earning his GED, and completing courses financial responsibility, automobile diagnostics, and science.

(App. 319-320.) Mr. Needham has also held jobs throughout his incarceration, including as an orderly at Milan and most recently in in sanitation at FMC Rochester. (App. 323.) Mr. Needham also remains very close to his wife, who has made a concerted effort to remain in touch via telephone and email.

These post-offense developments reflect significant rehabilitative efforts and, through them, a reduction in risk of future criminal conduct. Moreover, Mr. Needham has served more than fifty percent of his prison sentence, which exceeds what this Court considered appropriate when granting a motion for compassionate release in similar circumstances. *Walker*, No. 11-cr-381 (SRN/HB), 2020 WL 4194677, at *1 (granting compassionate release where prisoner served thirty-one percent of his sentence); see also *Trice*, 12-cr-96 (PAM), 2020 U.S. Dist. LEXIS 141608, at *2-3 (granting compassionate release where prisoner served approximately fifty percent of his sentence).

The nature of Mr. Needham's offense should not preclude this Court from granting a reduction in his sentence. To be sure, Mr. Needham's offenses are serious. However, Mr. Needham's offenses were the result, at least in part, of substance use and addiction. (PSI at 38-40); see also *Bennett*, No. 15-cr-260(10) (PAM/TNL) at *3 (granting motion for compassionate release after acknowledging that inmate's criminal history was "reflective of his struggles with drug addiction and his traumatic upbringing").

11

Based on Mr. Needham's post-conviction conduct and his underlying health conditions, this Court should conclude Mr. Needham's risk of recidivism is small.

If released Mr. Needham's focus will be trained on continuing to adjust to his new life and positive integration into the community, with the help of a supportive family.

## CONCLUSION

Because of his significant health issues and risk factors, Mr. Needham faces a substantial risk of severe illness, complications, or death from COVID-19. He is not a danger to the community and has a viable plan for release and the support of his wife. For these reasons, Mr. Needham respectfully requests that the Court grant his § 3582(c) motion to modify his sentence.

Dated: February 16, 2021                Respectfully submitted,

/s/ Amy Conners
Amy Conners

BEST & FLANAGAN LLP
60 South Sixth Street, Suite 2700
Minneapolis, MN 55402
Telephone: (612) 339-7121
aconners@bestlaw.com
aleitch@bestlaw.com

*Attorneys for James Patrick Needham*